**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NEBRASKA**

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil Action No. __8:10CV262__ |
| | ) | |
| QUIKTRIP CORPORATION, | ) | |
| | ) | |
| Defendant. | ) | |
| _____ | ) | |

<u>**CONSENT DECREE**</u>

**I.  BACKGROUND**

**A.      Introduction**

1.      This Consent Decree is agreed to, by and between, Plaintiff United States of America and

QuikTrip Corporation.

2.      For purposes of this Consent Decree, QuikTrip Corporation is referred to as "QuikTrip"

or "Defendant," the United States Department of Justice is referred to as "Department" or

"United States," and Plaintiff United States and Defendant are referred to collectively as

the "Parties."

3.      This action was brought by the United States to enforce the provisions of Title III of the

Americans with Disabilities Act of 1990 ("ADA"), 42 U.S.C. §§ 12181 - 12189 ("Title

III"), and its implementing regulation, 28 C.F.R. pt. 36 ("Title III Regulation"), which

includes the ADA Standards for Accessible Design, 28 C.F.R. pt. 36, app. A (1991)

(revised July 1, 1994) ("ADA Standards" or "Standards").  Defendant owns and operates more than 550 convenience stores and gas stations, and truck stop and travel center facilities, under the QuikTrip brand, located in at least nine states, including Arizona, Georgia, Iowa, Illinois, Kansas, Missouri, Nebraska, Oklahoma, and Texas.  These facilities were designed, constructed, and/or altered by QuikTrip or by third party architects and contractors retained by QuikTrip.  They are based on prototype design plans, and share common, and often identical, architectural elements and features.  The United States' Complaint in this action alleges that QuikTrip has engaged in a pattern and practice of disability discrimination in violation of Title III of the ADA and the Title III Regulation by failing to design and construct facilities and failing to make alterations to facilities in compliance with the ADA Standards, and by failing to remove barriers to access for individuals at facilities where readily achievable to do so.

4.      Defendant has its principal place of business at 4705 S. 129th E. Avenue, Tulsa, Oklahoma 74134.  Defendant is a private entity within the meaning of Section 301 of the ADA, 42 U.S.C. § 12181, and 28 C.F.R. § 36.104.  The convenience stores, fuel stations, and truck stop and travel centers owned, operated, and/or altered by Defendant are places of public accommodation covered by Title III of the ADA. 28 C.F.R. § 36.104.  Because Defendant owns, operates, designs, constructs, and alters places of public accommodation, Defendant is covered by, and subject to the requirements of, Title III of the ADA. 42 U.S.C. §§ 12181(7)(F), (7)(E), and 12183.  For purposes of this Consent Decree, "QuikTrip Store" shall mean and refer to any place of public accommodation owned or operated by QuikTrip.

5.      Defendant denies the allegations in the Complaint that it discriminated against the

Complainants or other persons with disabilities.  Defendant avers that it has defenses to

each and every claim and that it voluntarily sought to remedy self-identified ADA

violations prior to entering into this Consent Decree with the United States.  Specifically,

QuikTrip contends that it initiated an accessibility improvement program that it believes

to be sufficient to comply with ADA requirements.  The United States disagrees with

QuikTrip's contentions.  Defendant is entering into this Consent Decree to avoid the

costs of further litigation with the United States.  Nothing in this Consent Decree shall be

interpreted as an admission of liability for violations of the ADA.

**B.      Relevant Provisions of the Americans with Disabilities Act**

6.      The ADA prohibits public accommodations, including those that own and operate

convenience stores, fuel service stations, and truck stop and travel center facilities, from

discriminating against individuals on the basis of disability in the full and equal

enjoyment of the goods, services, facilities, privileges, advantages, and accommodations

of places of public accommodation.  42 U.S.C. § 12182(a); 28 C.F.R. § 36.201.

7.      The ADA also prohibits the failure to design and construct convenience stores, fuel

service stations, truck stop and travel center facilities, and other places of public

accommodation and commercial facilities built for first occupancy after January 26,

1993, to be readily accessible to and usable by individuals with disabilities in accordance

with the ADA Standards.  42 U.S.C. § 12183(a)(1); 28 C.F.R. §§ 36.401, 36.406(a).

8.      The ADA further prohibits the failure to make alterations to convenience stores, fuel

service stations, truck stop and travel center facilities, and other places of public

accommodation and commercial facilities in such a manner that, to the maximum extent

feasible, the altered portions of the facilities are readily accessible to and usable by

individuals with disabilities in accordance with the ADA Standards.  42 U.S.C.

§ 12183(a)(2); 28 C.F.R. §§ 36.402, 36.403, 36.406(a).

9.      The ADA additionally prohibits the failure to remove architectural barriers at

convenience stores, fuel service stations, truck stop and travel center facilities, and other

places of public accommodation where such removal is readily achievable.  42 U.S.C.

§ 12182(b)(2)(A)(iv); 28 C.F.R. § 36.304.

**C.      Consent of the Parties to Entry of this Decree**

10.     The Parties agree that the Court has jurisdiction of this action pursuant to 42 U.S.C.

§ 12188(b)(1)(B) and 28 U.S.C. §§ 1331 and 1345.  The Parties further agree that the

controversy can and should be resolved without further proceedings and without an

evidentiary hearing.

11.     As indicated by the signatures appearing below, the Parties agree to entry of this Consent

Decree by the Court.

**It is hereby ADJUDGED, ORDERED, and DECREED:**

**II.  GENERAL NONDISCRIMINATION REQUIREMENTS**

12.     Defendant, and each of its officers, employees, agents, successors, and assigns, and all

others in active concert or participation with Defendant, are permanently enjoined from:

a.      Discriminating against an individual on the basis of disability or taking any other

action in violation of Title III of the ADA, 42 U.S.C. §§ 12181 - 12189; Section

503 of the ADA, 42 U.S.C. § 12203; or the Title III Regulation, 28 C.F.R. pt. 36;

b.      Failing or refusing to design and construct QuikTrip Stores that are readily

accessible to and usable by individuals with disabilities in full compliance with 42

U.S.C. § 12183(a)(1), 28 C.F.R. §§ 36.401 and 36.406, and the ADA Standards;

c.      Failing or refusing to make alterations to QuikTrip Stores in full compliance with

42 U.S.C. § 12183(a)(2), 28 C.F.R. §§ 36.402 - 36.406, and the ADA Standards;

d.      Failing or refusing to remove barriers at QuikTrip Stores where readily

achievable in full compliance with 42 U.S.C. § 12182(b)(2)(iv) and 28 C.F.R.

§ 36.304;

e.      Failing or refusing to make reasonable modifications in policies, practices, or

procedures, when such modifications are necessary to afford individuals with

disabilities an equal opportunity to access goods, services, facilities, privileges,

advantages, or accommodations in full compliance with 42 U.S.C.

§ 12182(b)(2)(A)(ii) and 28 C.F.R. § 36.302;

f.      Failing or refusing to maintain accessible features in operable working condition

in full compliance with 28 C.F.R. § 36.211; and

g.      Failing or refusing to take any action, or refrain from taking any action, when

necessary to avoid discrimination against an individual on the basis of disability

in the full and equal enjoyment of the goods, services, facilities, privileges,

advantages, or accommodations of any and all QuikTrip Stores, 42

U.S.C. § 12182(a).

### III.  ACTIONS TO REMEDY NONCOMPLIANCE WITH ACCESSIBILITY REQUIREMENTS AT QUIKTRIP STORES

13.     To ensure that convenience stores, fuel service stations, truck stop and travel center facilities, and other places of public accommodation owned or operated by QuikTrip are readily accessible to and usable by individuals with disabilities, QuikTrip will make physical, operational, and other modifications necessary to bring any and all such facilities into compliance with the ADA Standards according to the Schedule in Paragraph 14.  Such modifications shall include but not be limited to the items listed in Exhibit A to this Consent Decree.

14.     QuikTrip has retained an Independent Licensed Architect trained in and highly knowledgeable about the architectural accessibility requirements of the ADA.  This Independent Licensed Architect ("ILA"), paid by QuikTrip and approved by the United States, must certify compliance with all of the elements of Paragraph 13 of this Consent Decree and the ADA Standards for each QuikTrip Store.  QuikTrip must complete modifications at its Stores in sufficient time so that it can achieve certifications of compliance from the ILA in accordance with the following deadlines:

a.      One third of QuikTrip Stores open as of the Effective Date of this Consent Decree will achieve certification of compliance with the ADA Standards and the elements of Paragraph 13 of this Consent Decree by the ILA by no later than the end of the 12th month after the Effective Date of this Consent Decree.

b.      Two thirds of the QuikTrip Stores open as of the Effective Date of this Consent Decree, will achieve certification of compliance with the ADA Standards and the elements of Paragraph 13 of this Consent Decree by the ILA by no later than the end of the 24th month after the Effective Date of this Consent Decree.

c.  All of the QuikTrip Stores open as of the Effective Date of this Consent Decree will achieve certification of compliance with the ADA Standards and the elements of Paragraph 13 of this Consent Decree by the ILA by no later than the end of the 36th month after the Effective Date of this Consent Decree.

d.  Within ten (10) days after the Effective Date of this Consent Decree, QuikTrip will submit to the United States a schedule listing the QuikTrip Stores that will be certified pursuant to Paragraphs 14.a. through 14.c.

15.  In issuing certifications pursuant to this Consent Decree, the ILA retained pursuant to Paragraph 14 will use the certification form set out at Exhibit B.  QuikTrip will maintain such certifications issued by the ILA in its records and include copies of such certifications in its reports to the United States regarding compliance with this Consent Decree.  In determining compliance, the ILA may not rely on equivalent facilitation in lieu of compliance with a particular Standard, or an innovative site-specific accessibility solution, unless the ILA has received prior approval to do so from an Independent Licensed Architect who is retained by the United States to serve as an expert in this case ("USILA").  Any request for approval to rely on equivalent facilitation shall include an identification of the specific facility at issue (*i.e.*, type of facility and address) and a detailed written analysis by the ILA of how and why the particular departure from the Standard is a design or technology that will provide substantially equivalent or greater access to and usability of that facility.  Similarly, any request for approval to rely on an innovative site-specific accessibility solution shall include an identification of the specific facility at issue (*i.e.*, type of facility and address) and a detailed written analysis

by the ILA of how and why the solution is appropriate under the circumstances and consistent with ADA requirements.  Innovative site-specific accessibility solutions include, but are not limited to, determinations regarding the appropriate placement of accessible parking spaces, and associated curb ramps and accessible routes, at about twenty (20) QuikTrip Stores where trucks delivering fuel currently block access to accessible parking spaces because of the location of fueling fill ports, and readily achievable barrier removal on small sites with steep slopes.  QuikTrip and the ILA will provide the USILA with requested information and documents that the USILA deems necessary to make determinations regarding equivalent facilitation and innovative site-specific accessibility solutions, which may include, if requested by the USILA, access to QuikTrip Stores.  In making determinations on novel and complex issues relating to ADA compliance at QuikTrip Stores, the USILA will consult, as needed, with counsel for the United States.

### IV.  NON-DISCRIMINATION IN FUTURE QUIKTRIP FACILITIES

16.    QuikTrip shall ensure that each facility designed, constructed, purchased, leased, or otherwise acquired by or on behalf of QuikTrip ("Future QuikTrip Stores") shall comply in all respects with the requirements of Title III of the ADA, the Title III Regulation, the ADA Standards, and this Consent Decree before a Future QuikTrip Store is opened for business.  During the term of this Consent Decree, before opening any Future QuikTrip Store, QuikTrip shall obtain a Certification of ADA Compliance, using Exhibit B, from the ILA or a Certification of ADA Compliance, using Exhibit C, from either a Licensed Architect retained and paid by QuikTrip ("LA"), or a QuikTrip Construction/Project

Manager or equivalent ("CM").  Any LA or CM who issues a certification must be trained

regarding the ADA and the procedures for certification of ADA compliance by either the

ILA or the USILA.    QuikTrip will maintain such certifications in its records and include

copies of such certifications in its reports to the United States pursuant to Paragraph 37 of

this Consent Decree.

a.      The ILA shall conduct pre-occupancy certifications of no fewer than 10% of

        Future QuikTrip Stores that open within three years after the Effective Date of this

        Consent Decree, using the ADA Certification Form attached as Exhibit B.

        QuikTrip estimates that it will open 150 Future QuikTrip Stores during that three

        year period.  The ILA will certify compliance at any additional Future QuikTrip

        Stores using Exhibit B if, in his professional judgment, without prior approval by

        or consultation with QuikTrip, his participation in the certification process is

        required to ensure ADA compliance.

b.      At all Future QuikTrip Stores in which the ILA does not certify ADA compliance,

        a Certification of ADA Compliance shall be issued pre-occupancy by either an LA

        or CM using the form at Exhibit C.

c.      During the four months immediately following the Effective Date of this Consent

        Decree, Certifications of ADA Compliance will be issued no later than four

        months after the opening date for that Future QuikTrip Store.

d.      In some circumstances, QuikTrip may open Future QuikTrip Stores in two (2)

        phases.  In those circumstances, there will be two (2) phases of pre-occupancy

        certifications: the convenience store opening pre-occupancy certification phase

and the fuel dispensers opening pre-occupancy certification phase.  All

requirements of this Consent Decree, except for the requirements for fuel

dispensers and accessible routes to the accessible fuel dispensers shall be required

for certification under the convenience store pre-occupancy certification phase.

The remainder shall be required for certification under the fuel dispensers pre-

occupancy certification phase.[1]

## V.  ENSURING EQUAL ACCESS
## TO CUSTOMERS WITH DISABILITIES

17.    It is QuikTrip's policy to provide prompt and courteous service to all customers, including

customers with disabilities.  Consistent with this policy, to ensure that individuals with

disabilities have an equal opportunity to enjoy the goods, services, facilities, privileges,

advantages, and accommodations of its facilities, QuikTrip shall take the following

actions:

a.    Indoor and Outdoor Assistance.  Beginning as of the Effective Date of this

Consent Decree and continuing throughout its term, QuikTrip, upon request, shall

provide prompt and courteous fueling and other types of assistance, to individuals

with disabilities, free of charge, at all current and future QuikTrip Stores.

---

[1]A fuel dispenser is a machine at a fueling station that is used to pump gasoline, diesel, E85, or other types of fuel into vehicles.  At QuikTrip Stores, fuel dispensers have two fueling positions, except at QuikTrip Travel Centers with diesel fuel dispensers that may have only one fueling position.  A fuel dispenser can be a multi-product dispenser, commonly known as an MPD, or a single product dispenser.  The term fuel dispenser used here refers to single-product dispensers and MPDs.  For purposes of this Consent Decree, where the terms "fuel dispensers" or "fueling positions" are used, and the QuikTrip Store has more than one type of fuel dispenser, the requirements apply to fuel dispensers of each type and fueling positions at dispensers of each type.  At a QuikTrip Store with a diesel-only fuel dispenser, only one diesel fueling position must be accessible.

Following are examples of the types of assistance that QuikTrip will provide: cleaning windshields; opening doors; assistance in locating, retrieving, and carrying merchandise; reading product labels and prices and providing wayfinding assistance to customers who are blind or have low vision; and assistance in operating equipment, including food and beverage service equipment, vending machines, and point-of-sale payment devices.

b.    <u>Adoption, Distribution, Maintenance, and Enforcement of Policies</u>.  QuikTrip shall adopt, implement, maintain, and enforce the policies attached hereto as Exhibit D (QuikTrip Policy on Access, Service and Assistance for Customers with Disabilities) and Exhibit E (QuikTrip Policy Regarding Service Animals for People with Disabilities) beginning as of the Effective Date of this Consent Decree and continuing throughout its term.  Within sixty (60) days after the Effective Date of this Consent Decree, QuikTrip shall distribute copies of these policies to the managers and assistant managers of all QuikTrip stores that are open to the public for business.  Within ninety (90) days after the Effective Date of this Consent Decree, QuikTrip shall require managers and assistant managers to share these policies with all current employees and thereafter, to share these policies with new employees before a new employee begins performing duties that involve contact with customers.  It is QuikTrip's responsibility to ensure that each employee having contact with customers understands these policies, the actions required  to comply with the policies, and the consequences of noncompliance.  The policies distributed to managers, assistant managers, and employees shall be substantially

in the forms attached to this Consent Decree as Exhibits D and E.  The policies

may be supplemented by additional information or procedures to implement these

policies.  QuikTrip shall redistribute copies of these policies to managers and

assistant managers, who will share these policies with employees, at least annually

thereafter.  Within thirty (30) days after the Effective Date of this Consent Decree,

QuikTrip shall also post and maintain these policies on its website, in an accessible

and conspicuous location (*i.e.*, directly linked from the homepage of quiktrip.com)

and format (*i.e.*, HTML), where the policies can be readily found and reviewed by

members of the public.

c.      <u>Training</u>.  Within ninety (90) days after the Effective Date of this Consent Decree,

QuikTrip shall train all of its employees having contact with customers regarding

the requirements of this Consent Decree and the ADA relating to

nondiscrimination in the retail setting.  The training shall cover the policies at

Exhibits D and E and the following most common types of assistance that

QuikTrip employees will provide to customers with disabilities, upon request, in a

prompt and courteous manner, without any extra charge:  fueling assistance;

cleaning a windshield; opening doors; assisting in locating, retrieving, and

carrying food, drinks, or merchandise; reading product labels and prices and

providing wayfinding assistance to customers who are blind or have low vision;

and assistance in operating equipment, including food and beverage service

equipment, vending machines, and point-of-sale payment devices.  The training

also shall include the requirement to ensure effective communication (*e.g.*,

accepting and communicating on relay calls and using pen and paper to communicate with people who are deaf, are hard of hearing, or have speech impairments), the requirement to make reasonable modifications in policies, practices, and procedures (*e.g.*, accepting large print checks from people with low vision, making exceptions to "no pet" policies for people accompanied by service animals), and the requirement to maintain accessible features (*e.g.*, removing snow and ice from accessible parking spaces and other outdoor accessible features).

d.   <u>Training for New Employees</u>.  Throughout the term of this Consent Decree, the training described in Paragraph 17.c. shall be provided to all new employees before they begin performing duties involving customer contact.

e.   <u>Refresher Training</u>.  The training described in Paragraph 17.c. shall be provided to each QuikTrip employee having customer contact at least once during each year throughout the term of this Consent Decree.

f.   <u>Notification System for Outdoor Assistance</u>.  QuikTrip already has, and agrees to maintain in current QuikTrip Stores and Future QuikTrip Stores, a call button notification system that is available at each fueling position.  This call button notification system is available for use by all customers, including customers with disabilities, who need outdoor assistance.  Within one-hundred eighty (180) days after the Effective Date of this Consent Decree, QuikTrip shall test and if necessary modify or upgrade its call button notification system at each fueling position at each QuikTrip Store to ensure that each call button functions effectively in providing QuikTrip personnel inside the QuikTrip Store with a

notification that assistance is required outdoors and identifies the fueling position at which assistance is required.

g.    <u>Notification System Signage</u>.  Each call button shall include appropriate signage indicating the policy of providing fueling and other assistance to individuals with disabilities, which shall be conspicuous and easily readable from within a vehicle. Additionally, the signage at each store shall have the store's phone number posted for individuals to make phone calls to request assistance in the event the notification system malfunctions.  28 C.F.R. § 36.302(a); ADA Standards § 4.30. Within sixty (60) days after the Effective Date of this Consent Decree, QuikTrip shall propose signage language to counsel for the United States for review and approval.  After approval by the United States, signage shall be installed at each fueling position within sixty (60) days and thereafter maintained and refreshed, as necessary, so it remains readable by persons who are sitting in their vehicles at the associated fueling position.

h.    <u>Maintenance of Accessible Features</u>.  Beginning as of the Effective Date of this Consent Decree and continuing throughout its term, QuikTrip shall undertake the following steps to ensure that QuikTrip Stores are maintained so they are accessible to individuals with disabilities:

i.    QuikTrip shall establish and implement a process of ensuring that its controls and operating mechanisms, systems, and procedures used for obtaining fueling and other assistance are maintained in good working

order and are tested on a schedule of not less than once each week per

store.

ii.      QuikTrip shall establish and implement a process of ensuring that

accessible parking spaces, accessible routes, curb ramps, and all other

outdoor accessible elements at QuikTrip Stores are maintained in

accessible condition, free of built-up snow, ice, debris, and standing water.


i.      <u>Blocking Objects</u>.  Delivery trucks and other vehicles may not block or obstruct an

accessible parking space, route, and/or curb ramp.  ADA Standards §§ 4.4.1, 4.7.8.

QuikTrip Store personnel shall be trained to check the location of delivery trucks

upon knowledge of delivery personnel arrival and to ensure that accessible

parking, routes, and curb ramps are not blocked by delivery trucks before

accepting a delivery.  To maintain the accessibility of parking spaces reserved for

persons with disabilities, QuikTrip will install signage at accessible parking spaces

that makes clear that such spaces may not be used or blocked by delivery

trucks/deliveries and provides the store phone number and an ADA Complaint

phone number so that customers may complain about delivery trucks blocking the

spaces.  Such signage shall be installed so that it remains visible to individuals

who are unable to leave their vehicles to approach the signage when a delivery

truck is parked in the accessible parking space.

j.      <u>Actions to Ensure Employee Compliance with Policies</u>.  QuikTrip shall take

appropriate action, including disciplinary action, against any employee who fails

to comply with the requirements of Paragraph 17 of this Consent Decree after receiving training regarding those requirements.  The action taken will be consistent with the action QuikTrip ordinarily takes for an employee's violation of a federal, state, or local law or important QuikTrip company policy.  QuikTrip will maintain records regarding significant corrective actions taken pursuant to this provision of the Consent Decree and, in its reporting to the Department, shall include a description of such actions and the date of and reason why the action was taken but need not disclose the identity of an individual employee subjected to disciplinary action.

18.   <u>Accessibility Maintenance Checklist</u>.  Annually, at the same time that QuikTrip distributes the policies referenced in Paragraph 17.b., QuikTrip shall also distribute to each store manager an Accessibility Maintenance Checklist substantially in the form attached to this Consent Decree as Exhibit F.  The manager at each QuikTrip Store shall complete the Checklist and return it to QuikTrip's General Counsel within sixty (60) days after the distribution date.  QuikTrip shall provide copies of completed Checklists that its General Counsel has received during the preceding six months to the United States as part of the reporting required pursuant to this Consent Decree, together with a list of actions taken at each QuikTrip Store in response to deficiencies identified through the completed Checklists.

19.   Within ninety (90) days after the Effective Date of this Consent Decree, QuikTrip shall obtain and implement a toll-free telephone number ("ADA Comment Line") that is used solely to receive comments and complaints from customers and members of the public

relating to QuikTrip's service and facilities for individuals with disabilities ("ADA-related Complaints").  This ADA Comment Line will be answered by one or more employees who are trained regarding the requirements of Title III of the ADA, the terms of this Consent Decree, the use of relay services, and communication with individuals who are deaf, are hard of hearing, or have speech impairments.  This telephone number will be the same number that is posted on accessible parking signs to address complaints of delivery trucks/deliveries blocking accessible parking, as referenced in Paragraph 17.i.  Within ninety (90) days after the Effective Date of this Consent Decree, QuikTrip will also post this telephone number on its website below the link to its website accessibility policy.

20.   Within ninety (90) days after the Effective Date of this Consent Decree, QuikTrip shall post and maintain at each QuikTrip facility open to the public for business at any time during the term of this Consent Decree a sign or decal containing the toll-free telephone number of the ADA Comment Line and including the substance of the text contained in Exhibit G to this Consent Decree.  The sign or decal shall be printed in bold, easily readable print on a contrasting background, shall be at least 9 inches tall by 12 inches wide, and shall be posted in a conspicuous location and maintained and refreshed, as necessary, so that it can be easily observed and read by a customer with a disability who is outside a QuikTrip Store and unable to leave his or her vehicle.  QuikTrip also shall post, maintain, and refresh, as necessary, such a sign or decal at each Future QuikTrip Store that opens for business at any time during the term of this Consent Decree before the Store opens for business.

21.     QuikTrip shall be responsible for receiving and investigating all ADA Title III-related

complaints by customers received at its ADA Comment Line or otherwise directed to its

corporate offices.  Within ninety (90) days after the Effective Date of this Consent Decree,

QuikTrip shall post the toll-free telephone number for its ADA Comment Line on its

internet website (within the domain http://quiktrip.com/) in a website location that is

directly linked to its homepage and easy for customers with disabilities to find.  Consistent

with the requirements of Title III of the ADA, the toll-free number shall be posted in an

accessible format (*e.g.*, HTML) and accessible location.  Within sixty (60) days after the

Effective Date of this Consent Decree, QuikTrip shall designate and train one or more of

its headquarters employees (ADA Coordinator(s)) who will be responsible for receiving

and investigating ADA Title III-related complaints so that such employee(s) are

knowledgeable regarding the requirements of Title III applicable to QuikTrip, including

effective communication, reasonable modifications, the maintenance of accessible

features, architectural requirements, and the terms of this Consent Decree.

22.     Throughout the term of this Consent Decree, QuikTrip will receive and respond to any

disability-related complaints about facilities or services by a customer ("ADA-related

Complaint") directed to its ADA Comment Line or otherwise directed to its corporate

offices as follows:  (A) within five (5) business days after an ADA-related Complaint is

received, QuikTrip will commence an investigation, including contacting the complainant,

if necessary, to find out the allegations of the complaint and will investigate the complaint

with the appropriate QuikTrip staff where the complaint originated; and (B) QuikTrip will

complete its investigation and respond to the complainant within thirty (30) days after the

complaint is received, including discussing with the complainant, where appropriate, possible resolutions, including training or corrective actions for QuikTrip staff and relief for the complainant.  QuikTrip will maintain written records of ADA-related Complaints by customers, its investigations, and its responses to those complaints throughout the life of this Consent Decree.  Copies of such records will be provided to the United States pursuant to the reporting requirements of Paragraph 37 of this Consent Decree, and at any other time upon request.

23.    ADA Coordinator(s).  The ADA Coordinator(s) designated pursuant to Paragraph 21 of this Consent Decree shall coordinate QuikTrip's effort to comply with and carry out its responsibilities under the ADA and this Consent Decree, including the investigation of ADA-related Complaints, the coordination of corrective actions and relief for complainants to resolve ADA-related Complaints, and maintaining records of ADA-related Complaints, investigations, and actions taken to comply with this Consent Decree. QuikTrip shall make available on its website, in an accessible and conspicuous location (*i.e.*, directly linked from the homepage of quiktrip.com) and format (*i.e.*, HTML), the name(s), office address(es), telephone number(s), and email addresses of the ADA Coordinator(s).

24.    In addition to operating stores, QuikTrip operates a website.

25.    Website Accessibility.  QuikTrip has already initiated a program to improve the accessibility of its website.  In connection with this initiative, within one (1) month after the Effective Date of this Consent Decree, QuikTrip shall adopt, and thereafter maintain, a policy of nondiscrimination on the basis of disability in providing effective

communication via its website.  The policy provided as Exhibit H meets the requirements of this provision.  Before adopting a policy that is substantially different from the policy provided as Exhibit H, QuikTrip shall submit such policy to the Department for review and approval and shall incorporate comments provided by the Department before adopting the policy.

a.      Within two (2) months after the Effective Date of this Consent Decree, QuikTrip will distribute the policy to all persons – employees and contractors – who design, develop, maintain, or otherwise have responsibility for content and format of its website(s) or third party websites used by QuikTrip ("Internet Personnel").  Within three (3) months of the Effective Date of this Consent Decree, QuikTrip will provide training to Internet Personnel on website accessibility, including the requirements set out in the policy at Exhibit H.

b.      Within three (3) months after the Effective Date of this Consent Decree, QuikTrip will undertake a Website Accessibility Assessment to evaluate the delivery of content on its website to ensure inclusion and integration of people with disabilities, including individuals who use screen readers or voice interactive software, who use text magnification programs, who require the ability to adjust font size and/or color to view webpages, who require audio description to access video content, and who require captions to access audio materials.  The evaluation will take into consideration the following issues, but will also evaluate the website according to generally accepted standards for website accessibility, such as the

Standards promulgated pursuant to Section 508 of the Rehabilitation Act of 1973, as amended:

i.      For every image posted, including photographs, charts, color-coded information, or other graphics, QuikTrip will add a text equivalent to the image, to allow persons with disabilities who use screen readers or Braille displays to understand the basic content of the image or graphical element.

ii.     All documents will be posted in a text based format that is compatible with assistive technology, and not as images that do not have text of the file's content in a format accessible to a screen reader and Braille display

iii.    QuikTrip's website will allow Web browsers and other assistive technologies to manipulate colors and font settings on its webpages for individuals with low vision or color blindness to access the content.

iv.     Videos and other multimedia will incorporate features to make them accessible to individuals with disabilities, including audio descriptions of images (including changes in setting, gestures, and other details) to make videos accessible to persons who are blind or have low vision, among others, and the provision of text captions synchronized with the video image to make video and audio tracks accessible to people who are deaf or hard of hearing.

v.      Where appropriate, QuikTrip will also include the following considerations in developing webpages:

(1)     The inclusion of a "skip navigation" link at the top of webpages that allows people who use screen readers to ignore navigation links and skip directly to webpage content;

(2)     Minimizing the use of blinking, flashing, or other distracting features;

(3)     If included, allowing moving, blinking, or auto-updating objects of pages to be paused or stopped;

(4)     Online forms will include descriptive tags that provide persons with disabilities the information they need to complete and submit the forms;

(5)     If sounds automatically play, visual notification and transcripts will also be provided;

(6)     For pages that are auto-refreshing or that require a timed-response, providing a second, static copy of the page;

(7)     Titles, context, and other heading structures will be provided to help users navigate complex pages or elements (such as webpages that use frames).

c.      Within three (3) months after the Effective Date of this Consent Decree, QuikTrip shall provide a way for online visitors to request accessible information or services by posting a telephone number or e-mail address on its home page in a conspicuous and accessible location.  In that same location, QuikTrip will provide a notice soliciting feedback from visitors to QuikTrip's website on how

accessibility can be improved at QuikTrip and on QuikTrip's website and shall provide an accessible means of providing such information.

d.    Within four (4) months after the Effective Date of this Consent Decree, QuikTrip shall enlist people with a variety of disabilities to test its pages for accessibility.

e.    Within four (4) months after the Effective Date of this Consent Decree, QuikTrip shall develop a Website Accessibility Action Plan to address deficiencies in effective communication of content identified in the Website Accessibility Assessment, including the feedback provided by visitors to its website and from people with disabilities enlisted to test website accessibility, and the appropriate provision of auxiliary aids and services to achieve effective communication on its website.

f.    Within five (5) months after the Effective Date of this Consent Decree, QuikTrip shall implement the Website Accessibility Action Plan with appropriate auxiliary aids and services to achieve effective communication.

g.    During the second year and subsequent years of the term of this Consent Decree, QuikTrip shall perform the steps outlined in Paragraphs 25.a. through 25.f. within a comparable period of time.

## VI.  COMPENSATORY DAMAGES TO COMPLAINANTS AND OTHER AGGRIEVED PERSONS

26.    Within ten (10) business days after the Effective Date of this Consent Decree, QuikTrip shall deposit the sum of One Million Five Hundred Thousand Dollars ($1,500,000) in an interest-bearing account for the purpose of compensating Complainants and other aggrieved persons who may have been harmed by noncompliance with the ADA at one or

more QuikTrip Stores and who may be identified through the procedures set forth in this Consent Decree.  Also within ten (10) business days after the Effective Date of this Consent Decree, QuikTrip shall submit proof to the United States that the account has been established and the funds deposited.  QuikTrip shall bear all costs of establishing the account, maintaining it, and issuing checks from it.  Copies of account statements shall be promptly provided to the United States.

27.  At least once each week during the ninety (90) days following the Effective Date of this Consent Decree, including on at least five Sundays, QuikTrip shall arrange and publish a Notice to Potential Victims of Disability Discrimination ("Notice") as follows:

a.  Each Notice shall appear in the news sections of major newspapers in each market where QuikTrip does business and shall be at least an eighth (1/8) of a page in size;

b.  Each Notice shall set forth a summary of the legal and evidentiary contentions of the United States and a general statement of the relief provided under this Consent Decree.  Each Notice shall also contain a statement that the United States seeks information from any persons who claim to have been subjected to disability discrimination at a QuikTrip facility in connection with access to any facilities or services.  Each Notice shall invite such persons to contact counsel for the United States concerning their complaints within ninety (90) days of the publication of the Notice.  The text of this Notice shall be as set forth in Exhibit I; and

c.  QuikTrip shall provide a copy of the newspaper containing each such Notice to counsel for the United States within three (3) days after publication of the Notice.

QuikTrip shall notify counsel for the United States in writing of the date on which the last such notice was published within five (5) days after its publication.

28. Within five (5) business days after the Effective Date of this Consent Decree QuikTrip shall publish the Notice in an accessible format (*i.e.*, HTML) and in a prominent location on its website (quiktrip.com). QuikTrip shall maintain the Notice on its website for a period of ninety (90) days following publication on its website. The intent of this paragraph is to enable individuals with disabilities to readily locate the Notice on QuikTrip's website.

29. Within thirty (30) days after the date of entry of this Consent Decree, QuikTrip shall produce or permit representatives of the United States to review any complaints about access to any of its facilities or services that it has received from or on behalf of an individual alleged to have an impairment.

30. The United States may, in its sole discretion, use other methods to identify other aggrieved persons, and this Consent Decree shall not be construed to limit the United States' right to do so.

31. Allegedly aggrieved persons shall have until ninety (90) days after the date of the last published Notice within which to contact the United States to assert any claims in connection with this Consent Decree.

32. The United States shall determine which persons, who have timely contacted the United States, have been harmed by ADA violations at a QuikTrip facility and shall determine in its sole discretion an appropriate amount of damages to be awarded to each such person, provided that:

a. No person shall be paid pursuant to this Section of the Consent Decree until the United States has received an executed "Waiver and Release of Claims" form from that person that is substantially similar to the document attached to this Consent Decree as Exhibit J. A copy of the executed "Waiver and Release of Claims" forms shall be provided to QuikTrip by the United States.

b. The total amount to be paid by QuikTrip pursuant to this Section of the Consent Decree shall not exceed One Million Five Hundred Thousand Dollars ($1,500,000) plus any interest accrued in the account established under Paragraph 26.

33. The United States shall notify QuikTrip in writing in one or more notifications of its determinations of the amount to be paid to each aggrieved person. Within thirty (30) days after receiving each such written notification, QuikTrip shall deliver to counsel for the United States checks to the aggrieved persons payable as directed in the written notification.

34. In the event that the United States distributes a total amount of compensatory damages pursuant to this Section of the Consent Decree that is less than the total amount of funds in the account established pursuant to Paragraph 26, including accrued interest, the remaining funds shall be paid to non-profit organizations serving the interests of individuals with disabilities designated by the United States and acceptable to QuikTrip. These organizations promote the interests of persons with disabilities in areas of the country where QuikTrip does business. The United States will provide QuikTrip with a notice regarding the amount of funds to be distributed to each of these entities. Within thirty (30) days after the receipt of such notice from the United States, QuikTrip will

deliver by common carrier Federal Express, delivery prepaid, a check made payable to the order of each such entity in the amount designated by the United States.  QuikTrip shall simultaneously send a copy of the check and any accompanying letter to counsel for the United States via common carrier Federal Express, delivery prepaid.

35.    The United States will notify QuikTrip regarding ADA violations at QuikTrip Stores identified during its review of claims in circumstances where QuikTrip needs to take additional action to remedy the ADA violations beyond what is otherwise required by the Consent Decree.

## VII.  CIVIL PENALTY

36.    The ADA authorizes the Attorney General to seek, and the Court to award, civil penalties of up to $55,000 for a first violation of Title III of the ADA and up to $110,000 for each subsequent violation.  42 U.S.C. §§ 12188(b)(2)(C) and (b)(3); 28 C.F.R. §§ 36.504(a)(3) and (b).  The United States believes the imposition of a civil penalty in this case is warranted to vindicate the public interest.  QuikTrip shall pay a civil penalty to the United States in the amount of Fifty-Five Thousand Dollars ($55,000).  QuikTrip will deliver the check or money order made payable to the Treasury of the United States to counsel for the United States by common carrier Federal Express, delivery prepaid within thirty (30) days after the Effective Date of this Consent Decree.

## VIII.  REPORTING, MONITORING, ENFORCEMENT, AND OTHER MISCELLANEOUS PROVISIONS

37.    Beginning six (6) months after the Effective Date of this Consent Decree and every six (6) months thereafter throughout the term of this Consent Decree, QuikTrip shall submit to counsel for the United States a written report detailing the following information for the

six month period preceding the report:  actions taken by QuikTrip to comply with this Consent Decree, QuikTrip facilities opened or re-opened for business, QuikTrip facilities constructed, and a description of each complaint about the accessibility of a QuikTrip facility or services by one or more individuals with disabilities and actions taken to address each such complaint.  The report will also provide a copy of certifications received pursuant to Paragraph 14 through 16 of this Consent Decree and a copy of any other documents or information required by this Consent Decree.

38.   The Department may review compliance with this Consent Decree at any time and may file a motion to enforce this Consent Decree if it believes that the Consent Decree, or any requirement thereof, has been violated.  The Department may conduct an on-site review of any QuikTrip facility, review any QuikTrip records related to actions required by the Consent Decree, and interview any QuikTrip employees or contractors for purposes of reviewing compliance with this Consent Decree and ADA requirements, including the requirements of the ADA Standards.  If the Department identifies any noncompliance with the Consent Decree or the ADA Standards, QuikTrip will be required to correct any noncompliance within sixty (60) days of receipt of notice of noncompliance from the Department.  If QuikTrip has not corrected the noncompliance within sixty (60) days after the receipt of notice, the violation will be considered a subsequent violation and require payment of a subsequent violation civil penalty in the amount of One Hundred Ten Thousand Dollars ($110,000).  The Department will provide written notice to QuikTrip of the location of any facility where it will review compliance at least ten (10) business days before doing so.  Similarly, the Department will provide written notice to QuikTrip of any

records that it wishes to inspect or personnel whom it wishes to interview at least ten (10) business days before doing so.

39.   Failure by the United States to enforce this entire Consent Decree or any of its provisions or deadlines shall not be construed as a waiver of the right of the United States to enforce other deadlines and provisions of this Consent Decree.

40.   All materials sent to the United States pursuant to this Consent Decree shall be sent to the following address by common carrier Federal Express, delivery prepaid:  Disability Rights Section, Attn: William Lynch, Trial Attorney, Disability Rights Section, Civil Rights Division, U.S. Department of Justice, 1425 New York Avenue, N.W., Washington, D.C. 20005.  The cover letter shall include a subject line referencing QuikTrip and DJ# 202-45-50.

41.   The Effective Date of this Consent Decree ("Effective Date") is the date of entry by the Court after the signatures of all Parties have been obtained.

42.   This Consent Decree is limited to resolving claims under Title III of the ADA related to the facts specifically set forth in Paragraph 3 above involving architectural noncompliance with the ADA Standards in facilities designed, constructed, or altered by QuikTrip; the failure to remove barriers to accessibility where readily achievable to do so; the failure to maintain accessible features; and the failure to implement reasonable modifications of policies, practices, and procedures necessary to afford equal access to goods, services, facilities, privileges, advantages, and accommodations to individuals with disabilities. Nothing in this Consent Decree relates to Title I of the ADA or affects QuikTrip's obligations to comply with any other federal, state, or local statutory, administrative,

regulatory, or common law obligation, including those relating to nondiscrimination

against or accessibility for individuals with disabilities.

43.   A copy of this Consent Decree and any information contained in it, including Exhibits A

through J, shall be made available to any person by Defendant or the United States upon

request.

44.   The United States' Complaint shall be dismissed without prejudice to the right of the

United States to petition the Court, at any time during the duration of this Consent Decree,

to reopen the case for the purposes of enforcing the Consent Decree.  The Parties to this

Consent Decree shall endeavor in good faith to resolve informally any differences

regarding interpretation of and compliance with this Consent Decree prior to bringing

such matters to the Court for resolution.

45.   Any time limits for performance imposed by this Consent Decree may be extended by the

mutual written agreement of the Parties.

46.   Each of the Parties to this litigation will bear its own costs and attorney's fees associated

with this litigation.

47.   This Consent Decree is final and binding on QuikTrip, and its agents, officers, employees,

contractors, and successors in interest.  In the event QuikTrip seeks to transfer or assign

all or part of its interest in any facility covered by this Consent Decree to an unrelated

entity, and the unrelated entity intends to carry on the same or a similar use of the facility,

QuikTrip shall either make all necessary modifications required by Paragraph 13 prior to

the transfer or assignment or, as a condition of sale, obtain the written accession of the

unrelated entity to any obligations remaining under Paragraph 13 of this Consent Decree

for the remaining term of this Consent Decree.  In the event QuikTrip seeks to transfer or

assign all or part of its interests in any facility covered by this Consent Decree to an

affiliate or other related entity, QuikTrip shall retain all obligations under this Consent

Decree with respect to such facility.

48.    The individuals signing this Consent Decree represent that they are authorized to do so on

behalf of the respective entity for which they have signed.

49.     This Consent Decree shall remain in effect for a term of four (4) years from its Effective

Date.  The term of this Consent Decree may be extended by mutual written agreement of

the Parties.

SO ORDERED this *19th* day of _____*July*_____, 2010.

_____
UNITED STATES DISTRICT JUDGE

**Signatures indicating agreement to entry of this Consent Decree:**

**For the United States of America:**

ERIC H. HOLDER, JR.
Attorney General of the United States

DEBORAH R. GILG                          THOMAS E. PEREZ
United States Attorney                   Assistant Attorney General
LAURIE KELLY                             SAMUEL R. BAGENSTOS
Assistant United States Attorney         Principal Deputy Assistant Attorney General
District of Nebraska                     Civil Rights Division

JOHN L. WODATCH, Chief
PHILIP L. BREEN, Special Legal Counsel
Disability Right Section

By:_____
JEANINE M. WORDEN, Deputy Chief
Virginia Bar No. 29754
Disability Rights Section (NYA)
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
Telephone: (202) 353-9875
Fax: (202) 514-7821

Dated: 7-15-2010

Page 32 of 73

By: _____
DOV LUTZKER, Special Counsel
California Bar 185106
Disability Rights Section (NYA)
U.S. Department of Justice
950 Pennsylvania Ave., N.W.
Washington, D.C. 20530
Telephone: (202) 514-5746
Fax: (202) 514-7821
E-Mail: Dov.Lutzker@usdoj.gov

Dated: 7/15/2010

By: _____
WILLIAM F. LYNCH, Trial Attorney
Virginia Bar No. 71226
Disability Rights Section (NYA)[2]
U.S. Department of Justice
950 Pennsylvania Avenue, N.W.
Washington, D.C. 20530
Telephone: (202) 305-2008
Fax: (202) 514-7821
William.Lynch@usdoj.gov

Dated: 7/15/2010

---

[2]Senior Investigator Dana L. Jackson also assisted with this matter.

**For QuikTrip Corporation:**

By: _____        By: _____
STUART SULLIVAN                       ROBERT L. DUSTON
Vice President, General Counsel, and  Saul Ewing, LLP
Secretary                             2600 Virginia Avenue, N.W.
QuikTrip Corporation                  Suite 1000
4705 South 129th East Avenue          Washington, D.C. 20037
Tulsa, Oklahoma 74134


Dated: _July 14, 2010_                Dated: _July 14, 2010_

# EXHIBIT A

**Required Accessible Elements at QuikTrip Stores**

1.  <u>Accessible Routes</u>.  Accessible routes shall be provided in compliance with ADA

    Standards §§ 4.1.2(1), 4.1.3(1), and 4.3, including the following requirements:

    a.  At least one accessible route complying with ADA Standards § 4.3 shall be

        provided within the boundary of the QuikTrip site from accessible public

        transportation stops, accessible parking, and public streets and sidewalks, to an

        accessible building entrance, in compliance with ADA Standards §§ 4.1.2(1),

        4.1.3(1), and 4.3.2(1).  Such accessible route(s) shall, to the maximum extent

        feasible, coincide with the route used by the general public, in compliance with

        ADA Standards § 4.3.2(1).

    b.  At least one accessible route complying with ADA Standards § 4.3 shall be

        provided to connect accessible buildings, accessible facilities, accessible elements,

        and accessible spaces that are on the same site, including the accessible entrance

        (*e.g.*, fuel pumps to the store entrance), in compliance with ADA Standards

        §§ 4.1.2(2), 4.1.3(1), and 4.3.2(2).

    c.  Each accessible route provided shall comply with the ADA Standards, including

        but not limited to the following requirements:

        (1)  <u>Width</u>.  Provide accessible routes with a minimum clear width of 36

             inches at all points, except as provided in the ADA Standards,

             where the width may decrease to 32 inches for a distance of no

             more than 24 inches (*e.g.*, doorways).  Specifically, where vending

             machines, display racks, trash receptacles, firewood, pallets of retail

merchandise, newspaper stands, planters, or benches are on site,

these items may not constrict an accessible route width to less than

that specified above.  28 C.F.R. § 36.211 and ADA Standards

§§ 4.1.2(2), 4.1.3(1), 4.2.1, 4.3.3, and 4.13.5.

(2)     <u>Protruding Objects</u>.  All objects that protrude from surfaces or posts

into circulation paths shall comply with ADA Standards § 4.4 and a

minimum 80 inch vertical clearance shall be provided in walks,

halls, corridors, aisles or other circulation spaces..  Protruding

objects shall not reduce the clear width of an accessible route or

maneuvering space, in compliance with ADA Standards § 4.4.1.

(3)     <u>Slope</u>.  An accessible route with a running slope greater than 1:20

(5%) is a ramp and shall comply with ADA Standards §§ 4.3.7 and

4.8.  Nowhere shall the cross slope of an accessible route exceed

1:50 (2%) or the slope of an accessible route exceed 1:12 (8.33%).

(4)     <u>Changes in Levels</u>.  Changes in levels along an accessible route

shall comply with ADA Standards §§ 4.3.8 and 4.5.2.  If an

accessible route has changes in level greater than ½ inch, then a

curb ramp that complies with ADA Standards § 4.7 or a ramp that

complies with ADA Standards § 4.8 shall be provided.

(5)     The overhangs of legally parked vehicles shall not reduce the width

of an accessible route.  Standards § 4.6.3.

2. <u>Ramps</u>.  Ramps shall be provided in compliance with the ADA Standards §§ 4.1.2(1), 4.1.2(2), 4.1.3(4), 4.3.8, and 4.8, including the following requirements:

    a.    <u>Dimensions</u>.  In accordance with the ADA Standards, each ramp shall be at least 36 inches wide with a slope not exceeding 8.33% and a cross slope not exceeding 2%; with level landings at least as wide as the ramp and 60 inches long at the top and bottom of the ramp and where there is an intermediate landing without a change in direction; with level landings measuring at least 60 inches by 60 inches when the ramp changes direction; with no level changes in excess of ½ inch vertically and no level changes greater than ¼ inch vertically unless they are beveled with a slope no greater than 50%; and with edge protection that is at least 2 inches high at the drop-off sides.

    b.    <u>Handrails</u>.  In accordance with the ADA Standards, handrails shall be provided that are between 1¼ inches and 1½ inches in diameter such that the inside handrail is continuous and both handrails have a continuous gripping surface along both sides of the ramp extending at least 12 inches beyond the top and bottom of the ramp parallel with the ground surface; the handrails do not rotate within their fittings; and both handrails are mounted between 34 inches and 38 inches above the ramp surface and 1½ inches from the wall, with ends rounded or returned smoothly to the floor, wall, or post.

    c.    <u>Surfaces</u>.  In accordance with the ADA Standards, ramps and approaches shall be designed so that water will not accumulate on walking surfaces.

3.    Curb Ramps.  Curb ramps shall be provided in compliance with the ADA Standards

§§ 4.1.2(1), 4.1.2(2), 4.3.7, 4.3.8, 4.5.2, 4.7, Fig. 12, including the following requirements:

a.    Dimensions.  Curb ramps shall be at least 36 inches wide, have a maximum slope

of 8.33% and a maximum cross slope of 2%, located so that they cannot be

obstructed by parked vehicles, have transitions on and off that are flush and free of

abrupt level changes, and have a stable, firm, and slip-resistant surface with an

ADA-compliant detectable warning.  If the curb ramp is located where pedestrians

must walk across it, curb ramps must have either flared sides (with a maximum

slope of 10%) or handrails or guardrails to protect against cross traffic.

b.    Encroachments.  Curb ramps shall not encroach, protrude, or project into access

aisles and/or vehicular traffic lanes.

4.    Accessible Parking.  Accessible parking spaces shall be provided in compliance with the

ADA Standards §§ 4.1.2(5) and 4.6, including but not limited to the following

requirements:

a.    Van Accessible Parking Spaces.  When there is only one accessible parking space,

it shall be a van accessible parking space.  Additional van accessible parking

spaces shall be provided in accordance with ADA Standards § 4.1.2(5)(a).

b.    Location.  Each accessible parking space shall be located on the shortest accessible

route of travel from the parking area to an accessible entrance, in compliance with

ADA Standards § 4.6.2.

c.    Width.  Each designated accessible parking space shall be at least 96 inches wide.

d.      Slope.  Each designated accessible parking space shall be flat and level with slopes and cross-slopes not exceeding 1:50 (2%) in all directions.  Standards § 4.6.3.

e.      Parking Access Aisles.  A designated access aisle, at least 96 inches wide for a van accessible space and 60 inches wide for a standard accessible space, shall be provided adjacent to each designated accessible parking space.  Each access aisle shall be flat and level with slopes and cross-slopes not exceeding 1:50 (2%) in all directions and, as a result, a curb ramp shall not be located in an access aisle.  Each access aisle shall be part of an accessible route to the facility entrance.  ADA Standards §§ 4.1.2(5), 4.6.3, Fig. 9.

f.      Signage.  Each accessible parking space shall be so designated with signage complying with ADA Standards §§ 4.6.4 and 4.30.  Such signage shall be located so that it cannot be obscured by a vehicle parked in the space, including a van, in compliance with Standards § 4.6.4.

5.    Accessible Fuel Dispensers, Self-Service Payment Mechanisms, and Call Buttons.  The following requirements will apply to fuel dispensers, self-service payment mechanisms, and call buttons located on fuel dispensers at QuikTrip Stores.

a.      QuikTrip Stores Designed and Constructed After the Effective Date.  At QuikTrip Stores designed and constructed by, on behalf of, or for the use of QuikTrip after the Effective Date of the Consent Decree, at least two fuel dispensers shall be on the shortest accessible route to the entrance to the QuikTrip Store and all fuel dispensers, the controls, self-service payment mechanisms, and call buttons shall comply with ADA Standards §§ 4.2, 4.3, 4.27.2 and 4.27.3 for Space Allowance

and Reach Ranges, and Controls and Operating Mechanisms, including the

following requirements:

i.      <u>Height</u>.  The highest operable part of the controls for each fuel dispenser,

        self-service payment mechanism, and call button shall be within one of the

        reach ranges specified in ADA Standards §§ 4.2.5 and 4.2.6, except that

        such equipment shall be installed so that a reach no higher than 48 inches

        shall be required for a side reach.

ii.     <u>Clear Floor Space</u>.  Clear floor space that allows a forward or a parallel

        approach by a person using a wheelchair shall be provided at each fueling

        position at each fuel dispenser, self-service payment mechanism, and call

        button in accordance with ADA Standards §§ 4.2.4 and 4.27.2.  The total

        space allotted to vehicles stopped at each fuel dispenser, self-service

        payment mechanism, and call button must ensure that such clear floor

        space is available in front of each fuel dispenser and self-service payment

        mechanism at each fueling position.

iii.    <u>Operation</u>.  The controls and operating mechanisms on each fuel dispenser,

        self-service payment mechanism, and call buttons must comply with ADA

        Standards §§ 4.27.1, 4.27.2, and 4.27.3.

iv.     <u>International Symbol of Accessibility</u>.  QuikTrip shall install a sign or

        signs with the International Symbol of Accessibility in a location

        conspicuous to vehicles approaching the fuel dispenser(s) where required

        to identify accessible routes.  Standards § 4.1.2(7).

b.   <u>QuikTrip Stores Open as of the Effective Date</u>.  The following provisions apply to QuikTrip Stores that are open for business as of the Effective Date of the Consent Decree.

i.   At QuikTrip Stores open for business as of the Effective Date of the Consent Decree where controls and operating mechanisms on fuel dispensers, self-service payment mechanisms, and call buttons are in compliance with the side reach range requirement of ADA Standards § 4.2.6, QuikTrip shall make modifications such that the fuel dispenser operating mechanisms and controls and the accompanying self-service payment mechanisms and call buttons serving at least two fueling positions comply with the requirements set out in 5.a.ii. and 5.a.iii. above.

ii.   At QuikTrip Stores open for business as of the Effective Date of the Consent Decree where controls and operating mechanisms on fuel dispensers, self-service payment mechanisms, and call buttons do not comply with ADA Standards § 4.2.6, QuikTrip shall make modifications such that the fuel dispenser operating mechanisms and controls, accompanying self-service payment mechanisms, and call buttons serving at least two fueling positions comply with the requirements set out in 5.a.i. through 5.a.iii. above.  Necessary modifications may include actions such as the lowering of a fuel dispenser to ensure that the fuel selector switch complies with ADA Standards § 4.2.6 or installing an auxiliary self-service

payment mechanism on a fuel dispenser to ensure that it complies with the 48 inch maximum side reach range requirement specified in 5.a.i.

iii.   At the two accessible fuel positions at each Store referenced in 5.b.i. and 5.b.ii., QuikTrip shall install a sign with the International Symbol of Accessibility in a location conspicuous to vehicles approaching the accessible fueling position.  Standards § 4.1.2(7).

c.   <u>Alterations</u>.  Notwithstanding the foregoing provisions of 5.a. and 5.b., if fuel dispensers are replaced during the term of this Consent Decree, all controls and operating mechanisms on such dispensers, including self-service payment mechanisms, will require a side reach of no more than 48 inches above the finished grade.  Any other alterations or modifications to fuel dispensers, self-service payment mechanisms, and call buttons that do not provide for a side reach of 48 inches or less above the finished grade and any fuel dispensers added to a QuikTrip Store, regardless of the date on which the QuikTrip Store was designed and constructed, shall include modifications to achieve compliance with the requirements of 5.a.i. through 5.a.iv. to the maximum extent feasible.

d.   <u>Acquisitions</u>.  The requirements of 5.b. and 5.c. shall apply to Future QuikTrip Stores that are not designed and constructed by, on behalf of, or for the use of QuikTrip after the Effective Date of this Consent Decree.

6.   <u>Other Amenities</u>.  Any other amenities offered to customers at other fuel positions (*e.g.*, paper towel dispensers, squeegees, trash receptacles) shall also be offered at the accessible fuel positions provided pursuant to 5. above.  These amenities shall be located on an

accessible route with clear floor space in front of the amenity and within one of the reach ranges in the ADA Standards except that the side reach provided shall always be 48 inches or less in height.  ADA Standards §§ 4.2.5, 4.2.6.

7.  <u>Exterior Air and Water Dispensers</u>.  At each location where QuikTrip provides an exterior air dispenser for use by the public, at least one such device shall be accessible in accordance with this paragraph.  The highest operable part of the controls for each accessible air dispenser shall be within one of the reach ranges specified in ADA Standards §§ 4.2.5 and 4.2.6.  Clear floor space that allows for a forward or parallel approach for a person using a wheelchair shall be provided in front of the accessible air dispenser.  ADA Standards § 4.27.2.  The ILA shall review and submit to the USILA for approval QuikTrip's proposed design for parking and access at the air dispensers.  If QuikTrip chooses to have an exterior water dispensers at any QuikTrip Store, then each such dispenser must meet the same provisions for accessibility that are required for air dispensers.

8.  <u>Signage</u>.  Provide toilet room signage with upper case, sans serif or simple serif type letters and numerals, meeting the requirements of the Standards for character height, raised characters, and finish and contrast, accompanied by Grade 2 Braille; mounted on the wall adjacent to the latch side of the door or on the nearest adjacent wall at a height of 60 inches above the finished floor to the centerline of the sign; and located so that a person may approach within 3 inches of the signage without encountering protruding objects or standing within the swing of a door.  ADA Standards §§ 4.1.2(7), 4.1.3(16), 4.30.1, 4.30.4, 4.30.5, 4.30.6.

9.    <u>Doors</u>.  Doors shall be provided in compliance with ADA Standards §§ 4.1.3(7), 4.13, Fig. 25, including but not limited to the following requirements:

    a.    <u>Generally</u>.  Doors shall have a clear opening at least 32 inches wide when measured from the face of the door to the opposite stop when the door is opened 90 degrees and shall have hardware usable with one hand and without tight grasping, pinching, or twisting of the wrist.  Lever-operated, push-type, and U-shaped handles are acceptable designs.

    b.    <u>Slopes</u>.  Unless an automatic door operator is provided, there must be clear and level maneuvering clearances at the pull side and the push side of the door as indicated in Fig. 25.

    c.    <u>Thresholds</u>.  The door's threshold must be ½ inch or less in height and, if it is greater than ¼ inch in height, beveled with a slope of no greater than 50%.

    d.    <u>Door Closers</u>.  If a door closer is provided, it must be set so that the sweep period of the door will, from an open position of 70 degrees, take at least 3 seconds to move to a point 3 inches from the latch, measured to the leading edge of the door.

    e.    <u>Operating Force</u>.  Interior doors must not require more than 5 pounds of force to open or close.

10.   <u>Accessible Means of Egress</u>.  Accessible means of egress for QuikTrip facilities shall be provided in the same number as required for exits by local building/life safety regulations.  ADA Standards §§ 4.1.3(8), (9).

11.     Toilet Rooms.  Toilet rooms shall be provided in compliance with ADA Standards

§§ 4.1.3(11), 4.16-4.19, 4.22, 4.24, 4.26, Figs. 29-32, 39, including the following

requirements:

a.      Toilet Rooms with Stalls.  Toilet rooms with stalls shall provide accessible

elements, including signage, door, door hardware, clear floor space, water closet,

stall size and arrangement, stall door, urinal (if provided), grab bars, lavatory,

unobstructed turning space, mirror, controls, and dispensers, that comply with the

ADA Standards.  ADA Standards §§ 4.1.2(6), 4.1.3(11), 4.2.3, 4.13, 4.16, 4.17,

4.18, 4.19, 4.22, 4.26, 4.27, 4.30, and Fig. 30.

b.      Single User Toilet Rooms.  Single user toilet rooms shall provide accessible

elements, including signage, door, door hardware, clear floor space, water closet,

urinal (if provided), grab bars, lavatory, unobstructed turning space, mirror,

controls, and dispensers, that comply with the ADA Standards.  ADA Standards

§§ 4.1.2(6), 4.1.3(11), 4.2.3, 4.22, 4.13, 4.16, 4.18, 4.19, 4.26, 4.27, 4.30, and Figs.

28, 29.

12.     Mercantile and Food Elements.  Mercantile and food elements shall be provided in

compliance with ADA Standards §§ 4.1.3, 4.1.5, and 4.1.6, including the following

requirements:

a.      Shelving and Display Units for Merchandise.  Fixed and built-in shelves or display

units allowing self-service of merchandise or packaged food, as well as any

movable displays, shall comply with ADA Standards § 4.1.3(12)(b); and shall have

clear floor space of 30 inches by 48 inches, allowing either a forward or parallel

approach, ADA Standards § 4.2.4.

b.     <u>Food and Drink Counters</u>.  Food and drink counters shall have a portion of the

main counter, with a minimum clear width of 36 inches, located on an accessible

route, and the counter shall be between 28 and 34 inches in height.  ADA

Standards §§ 5.5, 4.2.5, 4.2.6, Fig. 53.

13.     <u>Sales and Service Counters</u>.  At least one sales and service counter of each type at each

QuikTrip Store shall have a portion at least 36 inches wide and no more than 36 inches

above the finished floor, located on an accessible route.  ADA Standards §§ 4.1.1(2),

7.2(1), 4.1.3(1), 4.3.

14.     <u>Self-service Shelves and Dispensing Devices</u>.  Self-service shelves and dispensing devices

for tableware (*e.g.*, QT refillable cups, QT Mix*It*Up cups, hot dog bun and nacho

containers, etc.), dishware, condiments (*e.g.*, food toppings, seasonings, etc.), food (*e.g.*,

taquitos, buffalo chicken rollers, etc.), and beverages (*e.g.*, frozen cappuccino, Freezoni,

HYDR8 Premium Sports Drink, etc.) must be between 15 and 48 inches above the

finished floor for a front approach or between 9 and 54 inches above the finished floor for

a side approach.  ADA Standards §§ 5.6, 4.2.5, 4.2.6, Fig. 54.  Side reaches shall be no

higher than 48 inches above the finished floor in Future QuikTrip Stores that open for

business twelve months or later after the Effective Date of this Consent Decree.

15.     <u>Vending Machines, Equipment, and Other Controls and Operating Mechanisms</u>.  Such

equipment and devices shall be located on an accessible route and there shall be clear

floor space of 30 inches by 48 inches in front of such equipment and devices for a forward

or side approach.  Any such machines or equipment that are installed or replaced after the Effective Date of the Consent Decree shall have controls and operating mechanisms that comply with the ADA Standards if such equipment is available.  ADA Standards §§ 4.1.3(13), 4.2, 4.27, and 5.8.

16.     Fixed or Built in Seating and Tables.  If a QuikTrip Store provides fixed or built-in seating and tables, sufficient accessible tables shall be provided so that 5% of them (but no fewer than one) are available for use by people with mobility disabilities.  Each accessible table must be on an accessible route, must have knee space at the table at least 27 inches high, 30 inches wide, and 19 inches deep, and must have a table top between 28 inches and 34 inches above the finished floor.  Tables shall be distributed throughout the facility.  ADA Standards §§ 4.1.3(18), 4.32.3, 4.32.4, 5.1.

17.     Emergency Warning Systems.  If an emergency warning system is provided, visual alarm devices shall be provided in toilet rooms and any other area for common use at QuikTrip facilities, including convenience stores, travel centers, and hallways.  Such devices shall be integrated into the facility alarm system and shall meet the requirements of the ADA Standards.  Alarm pull stations shall comply with the requirements for clear floor space, reach ranges, and controls and operating mechanisms.  ADA Standards §§ 4.1.3(14), 4.27, 4.28.3.

18.     Ground and Floor Surfaces.  Ground and floor surfaces shall comply with ADA Standards §§ 4.1.2(4), 4.1.3(3), and 4.5, including the following requirements:

a.      Interior and exterior accessible routes, floors, walks, ramps, stairs, and curb ramps shall be stable, firm, and slip-resistant.  ADA Standards § 4.5.1.

b.      Changes in level between 1/4 inch and ½ inch shall be beveled with a slope no

greater than 50%.  Changes in level greater than ½ inch shall be accomplished by

means of a ramp that complies with ADA Standards §§ 4.7 or 4.8.  ADA Standards

§ 4.5.2.

19.   Protruding Objects.  Circulation paths shall be provided such that no objects (*e.g.*, QT

Signs, hall lanterns) have their leading edges protruding more than 4 inches into walks,

halls, corridors, passageways, or aisles at a height between 27 inches and 80 inches above

the finished floor or ground.  Free-standing objects mounted on posts or pylons may

overhang no more than 12 inches at a height between 27 and 80 inches above the finished

floor or ground.  Providing a cane-detectable barrier is an acceptable solution.  A

protruding object (and cane-detectable barrier) shall not reduce the clear width of an

accessible route or maneuvering space.  ADA Standards §§ 4.1.2(3), 4.1.3(2), and 4.4.

20.   Telephones.  Accessible telephones shall be provided with a clear floor space of at least

30 inches by 48 inches that allows either a forward or parallel approach by a person using

a wheelchair such that bases, enclosures, and fixed seats do not impede approaches to the

telephone; with the highest operable part of the telephone mounted no more than 48 inches

above the floor for a front approach or no more than 54 inches above the floor for a side

approach; that is hearing aid compatible and has a volume control mechanism; with

telephone books, if provided, located between 15 and 48 inches above the finished floor

for a front approach or between 9 and 54 inches above the finished floor for a side

approach; with a cord of at least 29 inches long from the telephone to the handset; and

with signage that complies with the Standards.  Standards §§ 4.1.3(17), 4.31, 4.30.7(2).

21.     All elements, whether or not identified in this Exhibit, shall comply with the Standards in their design and construction, including, among other things, showers, dressing and fitting rooms, and drinking fountains.

# EXHIBIT B

# Certification of ADA Compliance

I, [insert name], in my capacity as the Independent Licensed Architect retained by QuikTrip Corporation and approved by the United States pursuant to a certain Consent Decree executed by the parties and entered by the Court in *United States v. QuikTrip Corporation*,

Hereby CERTIFY to the best of my knowledge, information, and belief that the QuikTrip Store identified below is in compliance with the physical accessibility requirements of the Consent Decree and the ADA Standards as of the date shown below.

Description of Facility at Issue:

Features and Amenities provided at this Facility (*e.g.*, number of fuel dispensers and parking spaces):

Address of Facility:

Pursuant to that certain Consent Decree, I have obtained from the Independent Licensed Architect retained by the United States prior approval of any innovative site-specific solutions or equivalent facilitation relied upon in making this Certification.

_____              _____

Date                                                              Signature of Independent Licensed Architect

# EXHIBIT C

# Certification of ADA Compliance

I, [insert name], in my capacity as a Licensed Architect or Construction/Project Manager acting on behalf of QuikTrip Corporation pursuant to a certain Consent Decree executed by the parties and entered by the Court in *United States v. QuikTrip Corporation*,

Hereby CERTIFY as follows:

I have been trained regarding the Americans with Disabilities Act (ADA) and procedures for certification of ADA compliance by the Independent Licensed Architect retained by QuikTrip Corporation ("ILA") or the Independent Licensed Architect retained by the United States ("USILA"), and

To the best of my knowledge, information, and belief, the QuikTrip Store identified below is in compliance with the physical accessibility requirements of the Consent Decree and the ADA Standards as of the date shown below.

Description of Facility at Issue:

Features and Amenities provided at this Facility (number of fuel dispensers and parking spaces):

Address of Facility:

Pursuant to that certain Consent Decree, I have obtained from the Independent Licensed Architect retained by the United States prior approval of any innovative site-specific solutions or equivalent facilitation relied upon in making this Certification.

_____
Date

_____
Signature of Licensed Architect or Construction/Project Manager

_____
Title (*i.e.*, Licensed Architect or Construction/Project Manager)

# EXHIBIT D

## QUIKTRIP POLICY ON ACCESS, SERVICE, AND ASSISTANCE

## FOR CUSTOMERS WITH DISABILITIES

The Americans with Disabilities Act ("ADA") is a civil rights law that applies to QuikTrip facilities and services.  It guarantees equal opportunity and access for individuals with disabilities to QuikTrip facilities, including gas stations, convenience stores, truck stops, and travel centers (collectively "QuikTrip Stores").  The ADA requires QuikTrip Stores to be accessible to individuals with disabilities.  It also requires QuikTrip to provide customers with disabilities an equal opportunity to benefit from our goods and services.

It is QuikTrip's policy to make all changes necessary to ensure that QuikTrip Stores are accessible to and usable by customers with disabilities.  It is QuikTrip's policy to provide its customers with disabilities with the same services and assistance that it provides to all customers. QuikTrip will also modify its policies and procedures to provide additional assistance on request to customers with disabilities who may need that assistance to access our goods, services, and facilities.  Common types of assistance that QuikTrip provides to customers with disabilities include the following:  providing fueling assistance; cleaning windshields; opening doors; locating or retrieving merchandise; carrying merchandise to a customer's vehicle, reading product labels or prices; helping customers with vision disabilities find their way around our facilities, and providing assistance in operating beverage dispensers, food service equipment, and credit/debit card payment mechanisms.

Further information about the ADA can be obtained by calling the Department of Justice's toll-free ADA Information Line at 1-800-514-0301 (voice), 1-800-514-0383(TTY).

QuikTrip Stores and any other QuikTrip facilities open to the public do not discriminate against any individual on the basis of disability in the full and equal enjoyment of our facilities, services, and products.  If there are any questions or problems regarding service or the accessibility of any QuikTrip facility, please contact the station manager or call QuikTrip at [insert toll free ADA Comment Line or contact QuikTrip's ADA Coordinator at [telephone number and email address of ADA Coordinator]].

# EXHIBIT E

## QUIKTRIP POLICY REGARDING SERVICE ANIMALS

## FOR PEOPLE WITH DISABILITIES

QuikTrip is committed to making reasonable modifications in policies, practices, and procedures to permit the use of service animals by persons with disabilities.  Service animals play an important role in ensuring the independence of people with disabilities, and it is therefore our policy to welcome into our stores any animal that is individually trained to assist a person with a disability.

**What is a Service Animal?**
Service animals are individually trained to work or perform tasks for individuals with disabilities. Service animals are not always dogs; other animals may assist people with disabilities.  Service animals come in all breeds and sizes, may be trained either by an organization or by an individual with a disability, and need not be certified or licensed.  Service animals do not always have a harness, a sign, or a symbol indicating that they are service animals.  A service animal is **not** a pet.  Service animals assist people with disabilities in many different ways, such as:

- Guiding people who are blind or have low vision and retrieving dropped objects for them;

- Alerting people who are deaf or hard of hearing to sounds and the presence of others;

- Carrying and picking up items, opening doors, or flipping switches for people with disabilities who have limited use of hands or arms, limited use of their legs, or limited ability to bend or stoop;

- Pulling wheelchairs;

- Alerting people with disabilities to the onset of medical conditions such as seizures, protecting them and cushioning them if they fall, reviving them, and performing other tasks that reduce the risk of disability-related injury;

- Doing work or performing tasks for persons with traumatic brain injury, intellectual disabilities, or psychiatric disabilities, such as reminding a person with depression to take medication or waking him up, alerting a person with anxiety to the onset of panic attacks, orienting people with schizophrenia to reality, and helping people with intellectual or cognitive disabilities to locate misplaced items, find places, or follow daily routines; and

- Providing physical support and assisting people with physical disabilities with stability and balance.

**Requirements with Regard to Service Animals:**
Most of the time, people with disabilities who use service animals may be easily identified without any need for questioning.  If we can tell by looking, it is our policy not to make an individual feel unwelcome by asking questions.  If we are unsure whether an animal meets the definition of a service animal, it is our policy to ask the individual only two questions at the point when the individual first seeks entry to the QuikTrip facility:

- Is your animal a service animal required because of a disability?
- What work or tasks has your service animal been trained to perform?

If the individual responds that the animal is required because of a disability and has been trained to perform some work or task, we will welcome the person and service animal into the store.  Once an individual with a service animal has answered this question, we will not ask any further questions about his or her service animal.  We will **not** ask an individual questions about his or her disability.  We will **not** ask an individual to show a license, certification, or special ID card as proof of their animal's training.  We **must** permit service animals to accompany individuals with disabilities to all areas of our stores normally used by customers or other members of the public.  We treat individuals with service animals with the same courtesy and respect that QuikTrip affords to all of our customers and to other members of the public who visit our stores.  Service animals are **not** pets.  Employees must not interfere with the important work performed by a service animal by talking to, petting, or otherwise initiating contact with a service animal.

**Manager Responsibilities:**
In the event that a particular service animal's vicious behavior poses a direct threat to the health or safety of others, QuikTrip has the right to exclude the animal from our store at that time.  Barking or growling alone is not a direct threat.  In addition, a direct threat does not exist if the service animal's owner takes prompt, effective action to control the animal.  Moreover, we will not exclude a particular service animal based on past experience with other animals or based on fear that is not related to an individual service animal's actual behavior.  Each situation will be considered individually.  In the event QuikTrip excludes a service animal because of a direct threat, we will not refuse service to the individual with a disability when he or she is not accompanied by that particular service animal.  Only the Manager on Duty can make the decision to exclude a service animal because it poses a direct threat.

Any inquiries about this policy, or complaints about the implementation of the policy at an individual store should be referred to the ADA Comment Line [insert toll free ADA Comment Line number] or to QuikTrip's ADA Coordinator at [number/email of ADA Coordinator].

# EXHIBIT F

**ADA Maintenance Checklist**

QuikTrip Store # _____

Address:_____

City: _____   State:_____

Form filled out by: _____Date: ___/___/___

1.  ACCESSIBLE ROUTE
✓   Accessible routes must be kept free of obstructions such as display racks, trash receptacles, or merchandise.  The pavement must be smooth and level, and free of severe cracks, potholes, other deterioration, debris, snow, ice, mud, and gravel to provide a path that is easily traveled.

a. Are the accessible routes kept free of obstructions such as display racks, trash receptacles, or merchandise? ___ Yes ___ No

b. Is the pavement smooth and level, and free of severe cracks, potholes, other deterioration, debris, snow, ice, mud, and gravel to provide a path that is easily traveled? ___ Yes ___ No

2. ACCESSIBLE PARKING AREA
✓   Access aisles must be kept free of obstructions, including snow and ice, to allow customers with disabilities room to get in and out of their vehicles.
✓   The pavement for accessible parking spaces and access aisles must be smooth and level.

a.  Is the accessible parking space clear of unauthorized cars and other obstructions?  ___ Yes ___ No
b.  Are all accessible parking signs in place, in good condition, and visible over vehicles parked in the spaces, including vans?
 ___ Yes ___ No
c.  Are the accessible parking space(s) and the surrounding area relatively smooth? ___ Yes ___ No
d.  Are the accessible parking spaces and surrounding area free of severe cracks, potholes, or other significant deterioration? ___ Yes ___ No

3. CURB RAMPS
✓   Curb ramps or ramps are used to allow customers with disabilities to enter the store if there is a curb or step in the accessible path.  The area around the curb ramp must be kept clear, and the curb ramp must not be obstructed by parked vehicles or other objects, including snow, ice, or debris.

a.  If present, is the curb ramp unobstructed, and is the area around the curb ramp clear? ___ Yes ____ No

b.  If present, is the curb ramp relatively smooth and free of severe cracks, uneven settlement at the top and bottom, or any other significant deterioration? ___ Yes ___ No

## 4. CUSTOMER ENTRANCE

✓ The customer entrance must be easy for customers with disabilities to approach and enter. This includes providing ramps where there is a curb and rugs that lie flat to prevent tripping and other problems.

✓ There also must be sufficient maneuvering room in front of the door on either side.

a.  Is there an unobstructed clear flat area at the exterior side of the accessible door? ___ Yes ___ No

b. Is there an unobstructed clear floor area at the interior side of the accessible door? ___ Yes ___ No

c.  Are the door handles at the accessible door firmly attached and in good working order? ___ Yes ___ No

d. Is the door easy to open? ___ Yes ___ No

e.  Does the door closer take at least 3 seconds to close the door? ___ Yes ___ No

f.  Is the ADA service decal installed on the window? __ Yes ___ No

## 5. STORE INTERIOR

✓ Customers with disabilities must be able to access the areas where goods are available.

✓ Items on self-service shelves and dispensing devices for prepared food and beverages, and accompanying tableware, dishware, and condiments, must be within reach of a customer using a wheelchair, with sufficient clear floor space for approach and maneuvering room.

✓ Other self-service shelves and displays, such as those for packaged foods, must be on an accessible route with sufficient clear floor space for approach and maneuvering room.

✓ If items on shelves cannot be reached by customers with disabilities, employees must provide assistance in retrieving such items.

✓ Interior aisles must be at least 36" (3 feet) wide and must be free of obstructions such as display racks, trash receptacles, or stacked merchandise.

✓ The floor must be smooth and level.

a.  Is there sufficient clear floor space in front of all items on self-service shelves and dispensing devices?  ___ Yes ___ No

b.  Have employees been trained to provide assistance to people with disabilities to reach, locate, view, and carry items; use dispensers; and read product labels and prices? ___ Yes ___ No

c.  Are all merchandise aisles kept clear of temporary displays and stacked merchandise that narrow circulation paths to less than 36" wide or less than 32" wide for lengths of more than 24"? ___ Yes ___ No

d.  Is the floor relatively smooth and level?  ___ Yes ___ No

## 6.  CHECK-OUT COUNTERS & TRANSACTION DRAWERS

✓ Interior check-out counters must be accessible to customers with disabilities. At least part of the check-out counter or transaction drawer must provide a space at least 36" (3 feet) wide that is no higher than 36" (3 feet) from the floor. This area must be kept free and clear of obstructions such as displays, cash registers, and merchandise.

✓ There must be sufficient clear floor space for approach and maneuvering room by a wheelchair.

a. Is a portion of the check-out counter accessible to customers with disabilities? ___ Yes ___ No

b. Is there sufficient clear floor space, which is free of obstructions, in front of the check-out counter? ___ Yes ___ No

7. CUSTOMER RESTROOMS

✓ Public restrooms must be accessible to customers with disabilities.

a. Is there visible signage with braille and raised letters at each customer restroom? ___ Yes ___ No

b. Is the wheelchair maneuvering clear floor area on both sides of the restroom doors kept free from obstructions? ___ Yes ___ No

c. Is the door easy to open? ___ Yes ___ No

d. Does the door closer take at least 3 seconds to close the door? ___ Yes ___ No

e. Are the accessible features in the toilet room in good working order (e.g., toilet, grab bars, toilet paper dispenser)? ___ Yes ___ No

f. Are the drain line and hot water supply lines insulated so they will not burn a customer's leg? ___ Yes ___ No

g. Is the clear floor area at fixtures kept free of obstructions? ___ Yes ___ No

h. Is the restroom free of extra furniture, merchandise, and other things that reduce the space used for maneuvering a wheelchair? ___ Yes ___ No

8. FUEL DISPENSERS & PUMP ISLAND EQUIPMENT

✓ Fuel dispensers have call buttons for requests for assistance.

a. Are fuel dispenser call buttons and self-service card readers in good working order? ___ Yes ___ No

# EXHIBIT G

## Language for Sign/Decal

**QuikTrip is committed to full compliance with the Americans with Disabilities Act (ADA).   We are making changes to ensure that our facilities are fully accessible.  We also provide, upon request, assistance that individuals with disabilities may need to ensure an equal opportunity to enjoy our products, services, and facilities.  QuikTrip employees will provide customers with disability-related assistance courteously and free of charge.  If you have any ADA-related comments or concerns about QuikTrip, please contact our ADA Comment Line at [insert toll-free number].**

**information about the ADA is available from the Department of Justice's ADA Information Line at 1-800-514-0301 (voice) and 1-800-514-0383 (TTY) and at www.ada.gov.**

# EXHIBIT H

## POLICY OF NONDISCRIMINATION ON THE BASIS OF DISABILITY IN EFFECTIVE WEBSITE COMMUNICATIONS

**General Policy.**  QuikTrip will ensure that persons with disabilities have an equal opportunity to benefit from the goods, services, privileges, advantages, and accommodations offered by QuikTrip through the use of its website.  QuikTrip is committed to ensuring effective communication with the public, including persons with disabilities.

**Website Accessibility.**  QuikTrip provides online content in the following manner to ensure it is accessible to people with disabilities on the quiktrip.com domain and any other websites under its control and to which it posts content for the public:

1. For every image posted, including photographs, charts, color-coded information, or other graphics, QuikTrip will add a text equivalent to the image that can be read by screen readers. This includes images posted by QuikTrip on other websites to which the QuikTrip domain links.  The text equivalent will allow persons with disabilities, such as individuals who are blind, have low vision, or have a disability that affects their ability to read a computer display, and that use screen readers to understand the basic content of the image or graphical element.

2. All documents will be provided in a text-based format to be compatible with assistive technology used by individuals with disabilities.  Documents posted in image-based formats are often not accessible to people who use screen readers or people with low vision who use text enlargement programs or different color and font settings.

3. QuikTrip's website allows web browsers and assistive technologies to manipulate colors and font settings.  This allows for text enlargement and color variations in the browser of a user with low vision, or for those accessing the page on a large display.

4. For any videos or other multimedia, QuikTrip will incorporate features to make them accessible.  This includes the provision of audio descriptions of images (including changes in setting, gestures, and other details) to make videos accessible to people who are blind or have low vision.  This also includes the provision of text captions synchronized with the video images to make videos and audio tracks accessible to people who are deaf or hard of hearing. This further includes videos or other multimedia posted by or under the control of QuikTrip on other websites, including those to which the quiktrip.com domain or any of its subsidiary pages links.

5. Where appropriate, QuikTrip will also include the following other considerations in developing webpages:

   a. The inclusion of a "skip navigation" link at the top of webpages that allows people who use screen readers to ignore navigation links and skip directly to webpage content;

b.   Minimizing the use of blinking, flashing, or other distracting features;

c.   If included, allowing moving, blinking, or auto-updating objects of pages to be paused or stopped;

d.   Online forms will include descriptive tags that provide persons with disabilities the information they need to complete and submit the forms;

e.   If sounds automatically play, visual notification and transcripts will also be provided;

f.   For pages that are auto-refreshing or that require a timed-response, providing a second, static copy of the page;

g.   Titles, context, and other heading structures will be provided to help users navigate complex pages or elements (such as webpages that use frames).

**Website Accessibility Assessment and Action Plan.**   QuikTrip analyzes its website content semiannually to ensure its accessibility.  In addition to the considerations identified above, QuikTrip analyzes its website and content according to existing guidelines for accessible website design.  QuikTrip provides training to in-house staff and contractors responsible for webpage and content development on website accessibility.  QuikTrip also periodically enlists disability groups to test its pages for ease of use and incorporates that feedback into its Website Accessibility Action Plan.  QuikTrip also solicits input from visitors on how accessibility can be improved.

# EXHIBIT I

### NOTICE OF SETTLEMENT

### OF FEDERAL DISABILITY DISCRIMINATION LAWSUIT

### UNITED STATES V. QUIKTRIP CORPORATION

The U.S. District Court for the District of _____ has entered a Consent Decree resolving a lawsuit against QuikTrip Corporation, the owner and operator of gas stations, convenience stores, truck stops, and travel centers located throughout the southern and midwestern United States. The lawsuit, filed by the Civil Rights Division of the U.S. Department of Justice, alleged that QuikTrip's facilities are not accessible to individuals with disabilities, as required by the Americans with Disabilities Act (ADA).  A copy of the Consent Decree is available at www.ada.gov.

The Consent Decree requires QuikTrip facilities to be made accessible.  It also requires QuikTrip to provide fueling assistance and other types of assistance that customers with disabilities may need to enjoy equal access to QuikTrip's facilities and services.  QuikTrip must also pay a penalty for violating the ADA.

### DAMAGES FOR PERSONS HARMED
### BY DISABILITY DISCRIMINATION

The Consent Decree also establishes a fund for the compensation of persons with disabilities who were harmed by QuikTrip's lack of accessible facilities or services.  If you are a person with a disability and believe you were harmed because of the lack of accessible facilities or services at a QuikTrip location, you may be entitled to receive payment from the fund.

### INFORMATION ON SUBMITTING A CLAIM

To be eligible for consideration for possible payment, you must submit a timely claim. You may obtain information on how to submit a claim in several ways: (1) by sending an email with your name, address, and telephone number requesting claim information to [insert email address to be designated by United States], (2) by visiting the ADA Home Page at www.ada.gov, or (3) by calling the Disability Rights Section at [insert toll free voice and TTY telephone numbers to be designated by United States].  Act now!  All claims must be received by [insert date which is 180 days after entry of the Consent Decree].  Claims received after that date are not eligible for possible payment.

All claims will be evaluated by the Civil Rights Division, which will make the final decisions about who receives payment from the fund and the amount of damages that will be received.

# EXHIBIT J

## WAIVER AND RELEASE OF CLAIMS

I,_____, hereby agree that in consideration of the payment of $_____ made to me pursuant the Consent Decree between the United States of America and QuikTrip Corporation, I hereby release QuikTrip Corporation, and all of its agents and employees, as well as any affiliated entities, successors, and assigns, from any and all legal claims for monetary or equitable relief that I now have arising in whole or in part under the Americans with Disabilities Act.  I have been advised that, before signing this release, I have the right to consult a private attorney regarding its contents.  I have read this release and understand its contents, and choose to sign it of my own free will and not under duress.

**AGREED:**


_____          _____
Signature                                                                    Date